**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**DUBLIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **vs.** | § | **CASE NO. 3:16-CR-0012** |
| **WILLIAM HUTCHESON LEDFORD,** | § | |
| **Defendant.** | § | |

---

### SENTENCING MEMORANDUM

---

COMES NOW William Hutcheson Ledford, Defendant herein, by and through his

undersigned counsel, and submits this Sentencing Memorandum.

Respectfully submitted this 7th day of August, 2017.

WARNOCK & MACKEY, LLC

/s/ C. Mitchell Warnock, Jr.
C. Mitchell Warnock, Jr.
Attorney for Defendant
State Bar No. 738102

1104 Bellevue Avenue
Dublin, Georgia 31021
(478) 275-8119
(478) 275-7901 (fax)
warnocklaw@bellsouth.net

# TABLE OF CONTENTS

Page

Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    The Offense Conduct and Pre-sentence Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   Governing Principles. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   The Legislation Concerning Minimum Mandatory Sentences and Guidelines
Enhancements Should Be Given Minimal or No Weight. . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Progression of the Sentencing Guidelines. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Enhancements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    Examples of Progression. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.     The Section 3553 Factors.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    Mr. Ledford's History and Characteristics.. . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    The Need for the Sentence to Deter Future Criminal Conduct. . . . . . . . . . . . . 12

      C.    The Need for Effective Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D.    The Need for the Sentence to Reflect the Seriousness of the Offense and for
            Unwarranted Sentencing Disparity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            1.    Perspective. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            2.    Recent Decisions that Provide Guidance. . . . . . . . . . . . . . . . . . . . . 15

VI.   Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

APPENDIX

Tab

Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guideline*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A

Statement of Judge Robin J. Cauthron (W.D. Okla) before the United States Sentencing Commission, Austin, Texas, (Nov. 19, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B

Michael Seto, *Child Pornography Offender Characteristics and Risk to Reoffend* (Feb. 2012).   C

Curriculum Vitae of James Cantor, PHD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D

James Cantor, PHD, *Recidivism among child porn offenders: The current science* (July17, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . E

*Kelly M. Babchishin Online Child Pornography Offenders are Different: A Meta-analysis of the Characteristics of Online and Offline Sex Offenders Against Children* (March, 2014). . . . . . . . F

Psychosexual Evaluation performed by Dr. Baldwin. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G

Letter from William Hutcheson Ledford. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . H

Letter from Joanne Ledford. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Letter from Jim Ledford.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . J

Letter from Beth Ledford Hall.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . K

Letter from Cynthia Ledford Holton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L

Letter from Chief Aaron Price.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . M

Mr. Ledford submits this Sentencing Memorandum for the purposes of assisting the Court in fashioning a sentence under 18 U.S.C. § 3553(a) that is, in fact, "sufficient but not greater than necessary to comply with the purposes" of § 3553.

## I.  <u>INTRODUCTION</u>

William "Hutch" Ledford, 40 years of age, has lived in Wrightsville, Georgia, since his birth.  In fact, he has lived in the same house with his parents his entire life.  *See* PSI ¶ 51.  Mr. Ledford's mother is a retired school nutritionist and his father, who passed away in 2007, was a sales representative.  *Id.*

Mr. Ledford graduated from Johnson County High School in 1995.  *See* PSI ¶ 59. He then enrolled at Swainsboro Technical College where he received two diplomas. He earned one diploma for computer programming and he received another a degree as a micro-computer specialist.  *Id*. at 60.  After graduating in 1998, Mr. Ledford became employed with Swainsboro Technical College in the IT department. *See* Attachments F, H, PSI ¶¶ 62, 63.  He worked there until his arrest in 2016. *See* PSI ¶ 62.

Mr. Ledford is best described as introverted and timid. *See* Attachments I, J, K, L. Those closest to him can attest that from elementary school to this day he has neither had a girlfriend nor been involved in any kind of romantic relationship. *Id.*   For the most part, Mr. Ledford's time away from work is spent behind computers in a cyber world. *Id.*

Despite keeping to himself, Mr. Ledford has always given back to his community. *See* Attachments H, I, J, K, L.  He has volunteered his time and computer knowledge to local law enforcement. *Id.*  Until his arrest, Mr. Ledford provided all of the IT and computer work for the Wrightsville Police Department free of charge. *See* Attachment M. In addition, Mr. Ledford has

worked with the Johnson and Emanuel County fire departments helping recover security camera

footage and data to assist in identifying how fires started.  *See* Attachment H. Moreover, he

helped the Johnson County football team by live-streaming all of their games and running the

scoreboard for all of the home games.  *See* Attachments H, I, J.

## II.  THE OFFENSE OF CONVICTION AND PRESENTENCE REPORT

Mr. Ledford had several Yahoo accounts, and he was communicating via Yahoo

Messenger with various adult women in the Phillipines over the website "SexyAsianCams." *See*

PSI ¶ 21. Although he had several different Yahoo accounts, he primarily used

yvince39@yahoo.com. *Id.* at 20.

The women with whom he chatted would solicit pornography and child "shows" in

exchange for money.  *See* Attachment G at 4. Through chat rooms, Mr. Ledford himself asked to

see child pornography. He would send the money through Western Union or PayPal for such

pornography. *See* PSI ¶¶ 15, 20, 21. Although Mr. Ledford admits that some of the pornography

he viewed did involve penetration, the majority of the shows he watched involved female

children between the ages of 10-13 that were being touched in the genital area by the women

with whom he was communicating. *See* Attachment G at 4 ; PSI ¶ 21.

Mr. Ledford developed an emotional attachment to the adult women, and he naively

believed that they only did these things with him. *See* Attachment G.  They constantly begged

him for money, telling him they needed food.  Mr. Ledford became suspicious that he was being

scammed and that these women might be doing the same with other people. *See* PSI ¶ 21.  When

they asked for money, he was able to convince many of them to give him their passwords to their

Yahoo accounts. *Id*. Several of the women gave him the password and when he accessed the

accounts, he saw that this was going on with multiple people. Mr. Ledford then changed the passwords so that the women would be unable to use their accounts. *Id*.  He additionally provided PayPal and Western Union with the account names and indicated that the accounts were being utilized for the purpose of distribution of child pornography. *Id*. at ¶ 6.

This ultimately led to the investigation by the Yahoo E-Crime Investigations Team (ECIT).  In April 2016, ECIT officials concluded that Ledford was the individual responsible for the "hijacking" activities and trafficking of child pornography.  ECIT notified law enforcement at that time. *Id*. at ¶ 13.

On June 9, 2016, HSI Savannah investigators executed a federal search warrant at Mr. Ledford's residence located at 73 Pine Street, Wrightsville, Georgia. *Id*. at ¶ 16.  Mr. Ledford cooperated with investigators by giving them passwords to all of his accounts.  He additionally admitted that he received child pornography through his yvince39@yahoo.com email account, and he confessed to watching live webcam sessions of child pornography. *Id*. at ¶¶ 16, 20.

Mr. Ledford entered a plea agreement that contemplated him cooperating with law enforcement for purposes of providing substantial assistance.  Since the entry of the plea agreement, Mr. Ledford has honored the agreement by providing HSI agents with significant information.

On June 1, 2017, Mr. Ledford appeared before the Honorable Dudley H. Bowen Jr, United States District Judge, and pled guilty to Count 1 of the Indictment, in accordance with the written plea agreement.

The PSI calculates Mr. Ledford's base offense level at 22, then adds 16 levels for an adjusted offense level of 38. *See* PSI ¶¶, 29, 30, 31, 32, 33, 34, 35, 39.  With timely acceptance of

responsibility, his total offense level is 35 with a guideline range of imprisonment of 168-210 months. *Id.* at ¶¶ 41, 42, 43, 74.

### III.  GOVERNING PRINCIPLES

While it is true that 18 U.S.C. § 2251(d)(1)(A) requires a minimum mandatory sentence of 15 years, 18 U.S.C. § 3553(e) specifically provides that the Court can deviate below the mandatory minimum if the Government files a motion pursuant to U.S.S.G § 5K1.1.  The Government has contemplated filing such a motion requesting that this Court deviate below the minimum mandatory.  *See* Plea Agreement at ¶ 8(b) (Doc. 28).  The undersigned counsel fully expects such a motion will be filed by the Government prior to or at sentencing.

Sentencing courts are called upon to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553.  Therefore, the sentence imposed must consider, among other factors, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to deter future criminal conduct; the need for effective treatment; and the need for the sentence to reflect the seriousness of the offense and for unwarranted sentencing disparity.  18 U.S.C. § 3553.

A sentencing court has broad discretion to consider nearly every aspect of a particular case and a particular defendant in fashioning an appropriate sentence. As the United States Supreme Court recognized in *Gall v. United States,* 552 U.S. 38 (2007) "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate and sometimes magnify the crime and the punishment to ensue." Id. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035 (1996).

Since the decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are no longer mandatory and this Court's "range of choice dictated by the facts of the case is significantly broadened." *Gall*, 552 U.S. at 59. The factors set forth in 18 U.S.C. § 3553(a) guide sentencing. *See Booker*, at 261. Furthermore, a sentencing court "may not presume that the Guideline range is reasonable." *Gall*, at 50 (citing *Rita v. United States*, 551 U.S. 338, 351 (2007)).

Section 3553(a)'s sufficient-but-not-greater than-necessary clause sets an independent and certain limit on the sentence that a court may impose to meet the goals of sentencing. *See, e.g., United States v. Baker*, 655 F.3d 677, 683 n. 1 (7th Cir. 2011) (stating that the sentencing court is to impose "a minimally sufficient sentence"); *United States v. Rodriquez*, 527 F.3d 221, 228 (1st Cir. 2008) (explaining that a district court evaluating a variant sentence request should consider all relevant § 3553(a) factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing"). In addition to the § 3553(a) sentencing factors, a court may receive and consider any information concerning the defendant's background, character, and conduct in imposing a sentence.

In regard to variances from recommended advisory ranges under the Guidelines, following the decisions in *Booker*, *Rita*, and *Gall*, the sentencing court:

> [M]ay hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless…

*Rita*, 551 U.S. at 351 (citing Fed.R.Crim.P. 32(f)). An outside the guidelines sentence does not

have to be justified by "extraordinary" circumstances and is not governed by any "rigid mathematical formula." *See United States v. Irey*, 612 F.3d 1160, 1186 (11th Cir. 2010) (quoting *Gall*, 552 U.S. at 47).

Moreover, Section 3553(a)(3) "directs the judge to consider sentences other than imprisonment." *Gall*, 552 U.S. at 59. The Supreme Court has recognized, regarding the goal of rehabilitation, that "imprisonment is not an appropriate means of pursuing that goal." *Tapia v. United States*, 564 U.S. 319, 328 (2011) (applying 18 U.S.C. § 3582).

Sentencing courts generally give respectful consideration to the advisory guidelines because they assume that the Sentencing Commission has undertaken the rigorous study, hearings and analysis that is necessary to ensure that specific guidelines reflect the seriousness of the offense, take into account appropriate contributing factors that might warrant an enhancement, and render sentencing ranges proportional to other crimes. *See generally* U.S.S.G. § lAl.1 discussing the Congressional mandate for the Commission to take a rigorous and rational approach to developing the guidelines. However, when the validity of specific guidelines are challenged, courts cannot presume that those guidelines are reasonable. Instead, a sentencing judge must consider whether the advisory guideline range "fails properly to reflect considerations in a given case or category of cases." *Rita* 551 U.S. at 351.  A sentencing court must also consider whether a particular guideline at issue derives from the Sentencing Commission's proper exercise of its "characteristic institutional role." *Kimbrough v. United States,* 552 U.S. 85, 109 (2007). When guidelines fail to meet these requirements, they should be rejected.

## IV.  THE LEGISLATION CONCERNING MINIMUM MANDATORY SENTENCES AND GUIDELINES ENHANCEMENTS SHOULD BE GIVEN MINIMAL OR NO WEIGHT

Because Mr. Ledford may be sentenced below the mandatory minimum pursuant to 18 U.S.S.G. § 3553(e), neither the mandatory minimums nor the Guidelines should be given much weight in this case because they have no empirical basis and are not based on recommendations from the Sentencing Commission.

### A.  Progression of the Child Pornography Legislation

Many pages have been written regarding the progression of the child pornography legislation over the years. Indeed, there is an extensive study now in wide circulation entitled *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guideline* that discusses this flawed progression at great length. *See* Attachment A.

When the Commission completed the original guidelines in 1987, U.S.S.G. § 2G2.2, was limited to transporting, receiving and trafficking offenses, with a base offense level of 13 and possible enhancements based on the age of the children depicted and distribution for value. *See* Attachment A at 3-6. The Commission explained its decision to create a new, lower base level for possession based on empirical data and study. *Id*. at 5.

However, in 1991 based on the erroneous perception that the Commission had lessened penalties for child pornography crimes and over the explicit objection of the Commission, Congress required alteration of these guidelines.  In doing so, Congress rejected the Sentencing Commission's advice and its studied empirical approach to child pornography sentencing. Instead, Congress directed the Commission to increase the base level for child pornography offenses and to add enhancements for the number of items possessed and for a pattern of activity

Page 7

involving the sexual abuse or exploitation of a minor. *Id.* at 6-9.

In 1995, Congress again directed the Commission to increase penalties for child pornography and sex crimes against children.  According to a key Senate sponsor, the changes were needed to properly punish those who sexually exploited children and profited from it. *Id*. at 10-11.  In response, the Commission made various changes to the guidelines including, in pertinent part, a 2-level increase in the base level for simple possession and a 2-level enhancement for use of a computer, neither of which particularly target the serious offenders about whom Congress seemed most concerned. *Id*. at 11-12.  Indeed in a 1996 report, the Sentencing Commission questioned the computer enhancement noting that on-line pornography comes from the same pool of images found in print pornography and that different types of computer use have different effects on the two primary harms caused by the crime: (1) the degree to which the computer facilitated widespread distribution, and (2) the degree to which it increased the likelihood that children would be exposed. *Id*. at 14-15.  In other words, some computer uses are more harmful than others, yet the enhancement provided no distinction. Further, data shows that the enhancements for use of a computer and number of images are applicable in almost every case. *Id*. at 15.  Likewise, over 96% of cases involve an image of a child under 12. *Id*. at 24.

Finally in 2003, with little debate and no advanced notice to or consultation with the Commission, Congress made further changes in this area, including an increase in the statutory penalties for notice to receive child pornography to a mandatory 15-30 offense, a 5-year mandatory minimum sentence for trafficking/receipt offenses, and more amendments to the guidelines. *Id*. at 18-26.  In response, the Commission merged the guideline dealing with

possession, § 2G2.4, into the guideline dealing with trafficking, § 2G2.2, and, in order to conform to the new mandatory minimum sentences and increased statutory maximum, raised the base level for trafficking/receipt offenses from 18 to 22. *Id.*  The Commission also added significant enhancements for the number of images possessed, received or distributed. *Id.*

       B.    Enhancements

As mentioned above, the effect of the guidelines progression was to add enhancements that apply in almost every child pornography case.  Indeed, most enhancements are inherent to the crime of conviction and, therefore, render them meaningless in helping sentencing judges distinguish between offenders, an approach fundamentally inconsistent with 18 U.S.C. § 3553(a).

As one federal judge stated before the Sentencing Commission, "as widespread as computer use is now, enhancing for use of the computer is a little like penalizing speeding, but then adding an extra penalty if a car was involved." *See* Attachment B at 6.  And, as another court noted, "the number of images doesn't reflect intent any longer, because the click of the mouse can result in many more images than anybody ever really perhaps wanted."  *United States v. Maguire*, 436 Fed. Appx. 74, 78 (3rd Cir. 2011) (quoting district judge).

       C.    Example of Progression

To give a stark example of the guideline progression discussed above, the following illustrates just how the guideline enhancements have changed over the years:

```
Year:  1987
       §2G2.2
       Base Offense Level    13
       Specific Characteristics:
              (b)(1) a minor under 12 years: +2
       Adjustment for timely Acceptance of Responsibility:  -3
       Total Adjusted Offense Level: 12
       Sentencing Range: 10 - 16 months
```

Year:   1991
     §2G2.2
     Base Offense Level     15
     Specific Characteristics:
         (b)(1) prepubescent or a minor under 12 years: +2
         (b)(4) if material portrays sadistic or masochistic conduct: +4
         (b)(4) pattern of activity involving the exploitation of minor: +5
     Adjustment for timely Acceptance of Responsibility:  -3
     Total Adjusted Offense Level: 23
     Sentencing Range: 46 - 57 months

Year   1996
     §2G2.2
     Base Offense Level     17
     Specific Characteristics:
         (b)(1) prepubescent or a minor under 12 years: +2
         (b)(3) if material portrays sadistic or masochistic conduct: +4
         (b)(4) pattern of activity involving the exploitation of minor: +5
         (b)(5) transmission of notice by computer +2
     Adjustment for timely Acceptance of Responsibility:  -3
     Total Adjusted Offense Level: 27
     Sentencing Range: 70 - 87 months

Year   2003
     §2G2.2
     Base Offense Level     17
     Specific Characteristics:
         (b)(1) prepubescent or a minor under 12 years: +2
         (b)(3) if material portrays sadistic or masochistic conduct: +4
         (b)(4) pattern of activity involving the exploitation of minor: +5
         (b)(5) transmission of notice by computer +2
         (b)(6) if more than 600 images +5
     Adjustment for timely Acceptance of Responsibility:  -3
     Total Adjusted Offense Level: 32
     Sentencing Range: 121-151 months

Year   2004
     §2G2.2
     Base Offense Level     22
     Specific Characteristics:
         (b)(1) prepubescent or a minor under 12 years: +2
         (b)(3) if material portrays sadistic or masochistic conduct: +4
         (b)(4) pattern of activity involving the exploitation of minor: +5
         (b)(5) transmission of notice by computer +2

(b)(6) if more than 600 images +5
Adjustment for timely Acceptance of Responsibility:  -3
Total Adjusted Offense Level: 37
Sentencing Range: 210-262 months

In 2003, Congress made Mr. Ledford's crime, that is the publishing of any notice seeking child pornography, a 15-30 year offense.  The current state of the law is such that a person who possess child pornography is not subject to a mandatory minimum and only faces a range of punishment of 0 to 20 years.  However, a person who requests an image of child pornography via on-line chatting faces a 15 year mandatory minimum.

## V. THE SECTION 3553 FACTORS

A.      Mr. Ledford's History and Characteristics

Mr. Ledford comes from a very close-knit family, and he maintains a very close bond with his siblings.  In fact, since his arrest their support has continued, as the Court can read from their letters. *See* Attachments  H, I, J, K, L.  Indeed, knowing full well the nature of the charge against him and the challenges he will face returning to a small community as a sex offender, his mother, two sisters and brother are unwavering in their love and support for him. *Id.* The letters from his family members speak to the positive impact that he has made and will continue to make once his sentence has been served.

Family support is a valid consideration as this Court looks to sentencing options. *See United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (family support one of several valid grounds for downward variance from 41-51 months to probation); *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008).

A defendant's remorse is another valid consideration in imposing a sentence. *See United States v. Howe*, 543 F.3d 128, 138 (3d Cir. 2008).  All of the letters being submitted to the Court,

including Mr. Ledford's, carry a consistent theme that Mr. Ledford is truly remorseful for his actions. *See* Attachments H, I, J, K, L. There is no exaggeration in these letters and no excuses or attempts to minimize Mr. Ledford's offense; instead, they simply convey to the Court something of his overall character, placing his offense in the context of an entire lifetime of positive relationships, hard work, and good deeds.

B.    The need for the sentence to deter future criminal conduct.

As part of its institutional role in determining recommendations to Congress, the Sentencing Commission heard testimony from Dr. Michael Seto in 2012. Dr. Seto is a noted scholar in the field of sex offenders. Dr. Seto provided the Sentencing Commission a summary of the research conducted in the prior five years about the risk posed by online child pornography offenders. *See* Attachment C. Dr. Seto's research overwhelmingly concluded that first time offenders of non-contact child pornography crimes have a very low risk of sexual recidivism. *Id.*

Dr. James Cantor is recognized as an international leader and top expert worldwide on sexual offenders and the causes and nature of atypical sexual interests. *See* Attachment D. He recently completed his term as Editor-in-Chief of *Sexual Abuse: A Journal of Research and Treatment*, which is internationally recognized and is the official journal of the Association for the Treatment of Sexual Abusers. *See* Attachment E. Dr. Cantor currently serves on the Editorial Boards of the *Journal of Sexual Aggression* and *The Journal of Sex Research and the Archives of Sexual Behavior. Id.* In addition, he has published more than 75 peer-reviewed research articles, book chapters, and other works on atypical sexualities, including participating in studies of recidivism rates with child pornography users. *Id.* Those studies are now routinely cited in the field and are included in numerous textbooks of sex research. *Id.*

Page 12

Dr. Cantor agrees with Dr. Seto that the recidivism rates for child pornography users are extremely low. *Id.* Dr. Seto's testimony before the Sentencing Commission was based on his 2011 research. Since then, other studies have been conducted and the re-offending rates among child pornography offenders have shown remarkably consistent results. Dr. Cantor cites a credible study that was performed in 2015 on 428 federal child pornography offenders with no hands-on offenses. *See* Attachment F. This study again confirmed that child pornography offenders had very low rates of new sexual offenses: 1.6% committed a new pornography offense. *Id.*

Dr. Cantor's research results on recidivism rates is consistent with what the Sentencing Commission has long known: There is an extremely slim chance that an internet child pornography offender will re-offend.

C.    The Need for Effective Treatment and Rehabilitation.

18 U.S.C. § 3533(a)(2)(D) provides that the Court should consider the rehabilitative needs of a particular defendant. This consideration should be given equality among the other factors when determining that a sentence is "sufficient but not greater than necessary." In this case, addressing Mr. Ledford's rehabilitative needs serves other sentencing interests as well. A sentence structured around intensive supervision and counseling will also deter future misconduct and enhance public safety.

In preparing for sentencing, Mr. Ledford voluntarily undertook a psychosexual evaluation with Dr. Baldwin. *See* Attachment G.[1] Dr. Baldwin is the Director of Forensic Services at the

---

[1] This evaluation is being submitted to the Clerk contemporaneously herewith in a separate filing under seal.

Highland Institute in Atlanta, Georgia. *Id.* Dr. Baldwin specializes in evaluating and treating sex offenders, ranging from Internet offenders like Mr. Ledford to violent sexual predators. Dr. Baldwin was selected for the evaluation because his assessments and recommendations are routinely endorsed by courts.

In particular, Dr. Baldwin's report was prepared for the purposes of determining whether Mr. Ledford presents a danger of committing a future contact sex offense, whether he presents a risk of recidivism, and whether he is amenable to treatment and supervision.

In assessing these issues, Baldwin first concluded that Mr. Ledford has no history of sexual contact of any kind. *Id*. at 3. In addition, he found his prognosis as positive because Mr. Ledford is motivated to address his sexual deviancy. *Id*. at 14.

Dr. Baldwin makes plain that Mr. Ledford presents a low risk for further sexual offending. *Id*. More importantly, Dr. Baldwin is of the opinion that any risk posed in that regard can be handled through treatment. *Id*. at 9. It is Dr. Baldwin's conclusion that Mr. Ledford would be a viable community treatment candidate and would not pose significant problems for his Probation Officer and clinical provider. *Id.* at 6.

D.  The Need for the Sentence to Reflect the seriousness of the offense and for Unwarranted Sentencing Disparity.

1.  Perspective

First consider the hypothetical of a man living in Georgia who makes contact over the internet with a twelve year-old girl living in Maine. Using his age and experience, he convinces her to meet. He travels to Maine on *multiple* occasions and the two engage in *repeated* sexual encounters in violation of 18 U.S.C. § 2423(b). U.S.S.G. § 2G1.3(a)(4) establishes a base offense level of 24 for the offense. After a two-level enhancement for unduly influencing the

Page 14

child under U.S.S.G. §2G1.3(b)(2), a two-level enhancement for use of the computer (b)(3), and a two-level enhancement for commission of a sex act (b)(4), the final offense level would be 30. After Acceptance, the guideline range for this Category I offender would be 70-87 months imprisonment, which is considerably less than Mr. Ledford's guideline range.

Next consider a person charged with using interstate commerce facilities in the commission of a murder for hire. Under U.S.S.G. § 2E1.4, his guideline imprisonment range with acceptance of responsibility would be 87-108 months.

Even consider the aggravated case of Joe Champion, as discussed at *United States v. Kane*, 470 F.3d 1277 (8th Cir. 2006). Mr. Champion paid $20 to have a mother hold down her nine year-old child while Mr. Champion raped the young girl twice a week for two years. During these rapes, the child experienced such trauma she passed out during these violent acts. These assaults happened over 200 times! The damage to the child physically and emotionally is unimaginable. Using the Guidelines, applying all enhancements, and granting only Acceptance of Responsibility, the court determined the guideline range was 151-188 months, which is 30 months less than Mr. Ledford's guideline range. *Id*. at 1282.

2. Recent decisions that provide guidance.

In looking to the need for the sentence imposed to reflect the seriousness of the offense, this Court can be guided by sentences imposed in similar cases. This Court has varied downwardly when sentencing offenders under §2G2.2:

- In *United State v. Fehr*, Case # 4:15-cr-00143-LGW-GRS (S.D.Ga. 2015), Fehr a 55 year-old Episcopal priest faced an advisory guidelines range of 63 to 78 months. *See* Case # 4:15-cr-00143-LGW-GRS, Doc 27, p. 8. He received a

sentence of **36 months** imprisonment.  *See* Doc 32.

- In *United States v. Yarbrough*, Case # 4:16-cr-00098-LGW-GRS (S.D.Ga. 2016), the 65 year old, retired member of the U.S. Army Reserves faced an advisory guideline range of 97 to 121 months imprisonment and received a sentence of **42 months**. *See* Case # 4:16-cr-00098-LGW-GRS, Doc 47, pp. 12-13, Doc 52, p. 2.

- In *United States v. Miller*, Case # 2:15-cr-00014-LGW-RSB (S.D.Ga. 2015), the defendant was facing a guideline range of imprisonment of 63 to 78 months and received a sentence of **28 months** in prison, *see* Case # 2:15-cr-00014-LGW-RSB Doc. 52, p.2.

- In *United States v. Oh*, Case # 4:15-cr-00147-LGW-GRS (S.D.Ga. 2015), the former U.S. Army Captain entered a plea to possession of child pornography and was sentenced to **41 months** despite a sentencing guideline range of 97-121 months. *See* Case # 4:15-cr-00147-LGW-GRS, Doc 35, p.1, Doc. 42, p. 2.

- In *United States v. Bilton*, Case # 4:16-cr-00262-LGW-GRS (S.D.Ga. 2016),the defendant was facing a guideline range of imprisonment of 78 to 97 months and received a sentence of **42 months** in prison, *see* Case # 4:16-cr-00262-LGW-GR, Doc. 54, p. 2.

Similarly, a substantial variance is appropriate in Mr. Ledford's case.

## VI.  **CONCLUSION**

Putting Mr. Ledford's offense in context and recognizing the research and empirical data that corroborate the minimal risk Internet pornography offenders present is not to diminish the seriousness of the offense in this case. In no uncertain terms, Mr. Ledford understands the wrongfulness of what he did and deeply regrets his collaboration with the child pornography industry. He has admitted his guilt and already paid a heavy price for his offense; however, the focus must be on how best to remedy that harm and ensure that Mr. Ledford is once again a healthy, contributing member of society.  Mr. Ledford is in a category of offenders that are highly unlikely to re-offend or pose a risk to the community.  We, therefore, respectfully request that this Court "impose a sentence sufficient, but not greater than necessary" when sentencing Mr. Ledford.

Respectfully submitted this 7th day of August, 2017.

WARNOCK & MACKEY, LLC


/s/ C. Mitchell Warnock, Jr.
C. Mitchell Warnock, Jr.
Attorney for Defendant
State Bar No. 738102



1104 Bellevue Avenue
Dublin, Georgia 31021
(478) 275-8119
(478) 275-7901 (fax)
warnocklaw@bellsouth.net

Page 17

## CERTIFICATE OF SERVICE

This is to certify that on August 7, 2017, I electronically filed the within and forgoing

Sentencing Memorandum with the Clerk of the Court using the CM/ECF system, which will

send notification of such filing to all counsel of record in this matter.

Respectfully submitted this 7th day of August, 2017.

WARNOCK & MACKEY, LLC


/s/ C. Mitchell Warnock, Jr.
C. Mitchell Warnock, Jr.
Attorney for Defendants
State Bar No. 738102


1104 Bellevue Avenue
Dublin, Georgia 31021
(478) 275-8119
(478) 275-7901 (fax)
warnocklaw@bellsouth.net